988 F.2d 126
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darin Richard WEBSTER, Defendant-Appellant.
 No. 92-30288.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 22, 1993.*
Decided March 1, 1993.
 
 Appeal from the United States District Court for the District of Oregon, No. CR-92-25-01-OMP; Owen M. Panner, Chief Judge, Presiding.
 D.Or.
 AFFIRMED IN PART, VACATED AND REMANDED IN PART.
 Before GOODWIN, SCHROEDER and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Darin Richard Webster appeals from his 51-month sentence, imposed following a guilty plea, for bank robbery in violation of 18 U.S.C. § 2113(a). Webster contends that the district court erred by (1) increasing his offense level under the United States Sentencing Guidelines for making an "express threat of death" during the robbery, and (2) failing to recognize its discretion to depart downward from the applicable Guidelines range due to his over-represented criminal history. We have jurisdiction under 28 U.S.C. § 1291 and affirm in part and vacate and remand in part.
 
 A. Express Threat of Death
 
 3
 We review de novo the district court's construction and application of the Guidelines. United States v. Eaton, 934 F.2d 1077, 1078 (9th Cir.1991).
 
 
 4
 The Guidelines provide that a defendant's base offense level for robbery shall be adjusted upward by two levels "if an express threat of death was made." U.S.S.G. § 2B3.1(b)(2)(F); United States v. Strandberg, 952 F.2d 1149, 1151 (9th Cir.1991); Eaton, 934 F.2d at 1078-79. Although "express" is not defined in section 2B3.1, the commentary lists several examples of express threats. Each example contains either words or gestures indicating the speaker's intent to cause a potentially fatal consequence. See U.S.S.G. § 2B1.3, comment. (n. 7); Strandberg, 952 F.2d at 1151-52 (upholding adjustment based on admonishment not to pull the alarm "or my friend will start shooting"); Eaton, 934 F.2d at 1079 (upholding adjustment based on note reading "Give Me All Your Money or I'll Shoot"). An express threat need not be specific in order to instill the requisite level of fear in a reasonable person. See Strandberg, 952 F.2d at 1151-52.
 
 
 5
 Here, Webster robbed a branch of Security Pacific Bank. He admits that he handed the victim teller a demand note which read:
 
 
 6
 Anything happens and someone will be shot! I want money and I don't want anybody hurt, so don't push any buttons or ink the money. Stay calm and everything will be alright.
 
 
 7
 Webster argues that his demand note is distinguishable from the note underlying the adjustment in Eaton because he "tempered" the threat to shoot by stating that he did not want to hurt anyone, thus rendering his threat "dubious or ambiguous" rather than "express." We disagree. Webster threatened to cause a fatal consequence, and whether he "tempered" the threat is irrelevant. See U.S.S.G. § 2B3.1(b)(2)(F). The district court did not err by finding that Webster's note constituted an express threat of death. See Strandberg, 952 F.2d at 1151-52; Eaton, 934 F.2d at 1079.
 
 B. Downward Departure
 
 8
 While we lack jurisdiction to review the district court's discretionary refusal to depart downward, we review de novo the district court's legal determination that it lacked authority to depart. United States v. Brown, No. 92-50247, slip op. 1117, 1122 (9th Cir. Feb. 10., 1993).
 
 
 9
 "The same actions by a probationer can lead to direct punishment and can also constitute the basis on which his probation for a prior offense is revoked." United States v. Redd, 759 F.2d 699, 701 (9th Cir.1985) (multiple sentences do not constitute double punishment). The Guidelines direct the district court to add points to a defendant's criminal history score if he committed the offense of conviction while on probation for an earlier offense, or within two years of release from custody on an earlier offense. U.S.S.G. § 4A1.1(d)-(e). The Guidelines expressly contemplate that a defendant may receive adjustments under both sections. See U.S.S.G. § 4A1.1(e) (directing district court to add only one point under that section if defendant also received adjustment under section 4A1.1(d)).
 
 
 10
 The district court may depart below the resulting range if the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. U.S.S.G. § 4A1.3; United States v. Lawrence, 916 F.2d 553, 554-55 (9th Cir.1990). Moreover, the district court retains discretion to depart downward on based on any information concerning a defendant's background which is not specifically foreclosed by the Guidelines or other law. Brown, No. 92-50247, slip op. at 1122.
 
 
 11
 Here, at the time he committed the bank robbery, Webster was on probation for a Montana state conviction for negotiating bad checks. Consequently, he received two points in his criminal history score for committing the robbery while on probation for the Montana offense, and one point for committing the robbery within two years of his release from custody for the prior offense. See U.S.S.G. § 4A1.1(d)-(e). At sentencing, Webster conceded the applicability of these criminal history points, but argued that the district court should depart downward from the resulting range because his probation for the Montana offense would be revoked because of the robbery. He informed the district court that he was likely to receive a mandatory ten-year state sentence once his probation was revoked, and argued that it would constitute "double punishment" for the federal bank robbery.
 
 
 12
 At sentencing, the district court made the following relevant remarks:
 
 
 13
 It does seem very unfair, in a way, for two points to be added because he was on probation and an additional point to be added because the crime was committed within the limit--the time period the guidelines set, but I can't conclude that this isn't something that was taken into consideration by the sentencing commission. It appears to me that essentially this is the type of thing that will occur in most any situation where a defendant commits a crime while he's on probation and within the time limits.
 
 
 14
 ....
 
 
 15
 [But] to wind up with a Montana substantial sentence consecutive to our sentence doesn't seem to be the type of thing that the commission contemplated in a case like this where the former criminal charge is a fraudulent charge rather than a charge of violence (RT 6/29/92 at 6-7).
 
 
 16
 After hearing comments from the parties, the district court indicated that it wanted the federal sentence to run concurrently to the state sentence but concluded that it found no basis for departure.[1]
 
 
 17
 Webster points to the district court's concern that the Montana court would impose a consecutive sentence as proof that the court wished to depart downward, and contends that the district court erroneously thought it lacked discretion to do so. We agree.
 
 
 18
 The district court correctly found that the Sentencing Commission had contemplated a defendant's receiving criminal history points under both sections 4A1.1(d) and (e). Further, revocation of Webster's Montana state probation will not constitute "double punishment" for the bank robbery. See Redd, 759 F.2d at 701.
 
 
 19
 Nevertheless, although the Commission has clearly contemplated a defendant's receiving criminal history points for committing an offense while on probation, the Guidelines do not specifically address the situation in which a federal offense will serve as the predicate for subsequent revocation of a state sentence of probation. See United States v. Warren, 980 F.2d 1300, 1303 (9th Cir.1992) (noting that current version of U.S.S.G. § 5G1.3 "is only concerned with federal offenses committed when an individual is already serving a term of imprisonment stemming from other charges") (emphasis added). Where the situation is reversed, i.e., where a defendant's federal probation is revoked for conduct for which he is also serving another state or federal sentence, the Guidelines contemplate that the sentence following revocation will run consecutive to the first sentence. U.S.S.G. § 7B1.3(f) and comment. (n. 5). Departure from this guideline would still be permitted, however, if the district court found that a defendant's criminal history was overrepresented due to the nature of his prior offenses. See Brown, No. 92-50247, slip op. at 1123-24; see also 18 U.S.C. § 3553(b). Consequently, we cannot say that the Guidelines would not permit departure in the circumstance alleged by Webster.
 
 
 20
 Accordingly, we vacate the sentence and remand to the district court to consider whether a departure from the Guidelines is appropriate. We note, however, that we are not predicting whether the record supports departure on this basis nor how the district court will exercise its discretion if support exists. See id. at 1126.
 
 
 21
 AFFIRMED IN PART, VACATED AND REMANDED IN PART.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court indicated that Webster could bring a motion for reduction of the federal sentence under Fed.R.Crim.P. 35 if the Montana court imposed sentence to run consecutive to Webster's federal sentence. We note, however, that Rule 35 no longer authorizes the district court to reconsider a defendant's sentence except upon motion by the government or remand from this court